# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JOYCE A. HARROD, | ) | CASE NO. 3:17-cv-1839 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Joyce A. Harrod (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying her applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. Procedural History

On August 25, 2014, Plaintiff filed her application for POD and DIB, alleging a disability onset date of July 20, 2014. (Transcript ("Tr.") 464). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 380-415, 418-430). Plaintiff participated in the hearing on November 2, 2016, was

represented by counsel, and testified. (Tr. 321-379). A vocational expert ("VE") also participated and testified. *Id*. On January 19, 2017, the ALJ found Plaintiff not disabled. (Tr. 244). On July 5, 2017, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-4). On September 1, 2017, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 9, 13 & 14).

Plaintiff asserts the following assignments of error: (1) the ALJ failed to properly evaluate the opinion of a treating physician, and (2) the RFC is not supported by substantial evidence because "the ALJ did not properly analyze Ms. Harrod's diabetes mellitus or chronic diarrhea and need for unscheduled restroom breaks." (R. 9, PageID#: 1688, 1692, 1699).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1.  Treatment Records

On June 21, 2014, Plaintiff presented to the Emergency Room ("ER") with complaints of nausea and vomiting. (Tr. 685-687). She also related that she had epigastric pain and mid-back pain, but no other complaints. (Tr. 687). The final impression was diabetic ketoacidosis ("DKA") and "[n]ausea and vomiting in adult." (Tr. 690). Plaintiff weighed 160 pounds. (Tr. 688). Plaintiff stated that her sugars are generally well-controlled at home. (Tr. 706). Bradley E. Heth, D.O., noted on June 21, 2014, that Plaintiff was positive for nausea, vomiting, severe headache, and abdominal pain, but there was no indication of diarrhea. (Tr. 687-688, 700, 712). Her

---

[1]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs that relate to the claimed period of disability, and deemed relevant by the court to the assignments of error raised.

discharge diagnosis on July 2, 2014, included Type 1 diabetes (uncontrolled), hypoglycemia, essential hypertension, persistent nausea and vomiting, gastroparesis, cephalgia (improved), DKA (resolved), hypotension (resolved), and obesity. (Tr. 693).

On July 11, 2014, Plaintiff saw Leroy L. Schroeder, M.D., for her four month review. (Tr. 1485). She denied having diarrhea, vomiting, nausea, or constipation. (Tr. 1487). She also denied insulin resistance and hypoglycemia. *Id*. On the same day, she saw Eric T. Stallkamp, M.D., who noted Plaintiff was negative for diarrhea. (Tr. 915).

On August 4, 2014, cardiologist Adel M. Shaheen, M.D., noted that Plaintiff was recently hospitalized and "underwent a heart cath. … [which] showed severe stenosis of the ostium along diagonal artery, diffuse CAD, and mild systolic dysfunction of the left ventricle." (Tr. 841). Plaintiff had no chest pain and her current medications were continued. *Id*.

On September 19, 2014, Plaintiff sought care for hearing loss in the right ear without pain. (Tr. 925-934). She was negative for diarrhea and joint pain. (Tr. 930).

On September 22, 2014, Plaintiff underwent a psychological consultative examination (Tr. 935-939). With respect to daily activities, Plaintiff reported, "'just try to clean the house, do dishes, laundry ... I take care of my mom a lot too.' [Plaintiff] is able to cook and shop independently. She denied having any hobbies or special interests. [Plaintiff] reported having friends. Asked about activities with her friends, she replied, 'We walk. We shop. Go to movies.'" (Tr. 937). Clinical psychologist Albert E. Virgil, Ph. D., opined that Plaintiff is able to understand and carry out instructions, demonstrated adequate attention and concentration, appeared amenable to supervision and able to work alongside co-workers, and appeared mentally and emotionally capable of responding appropriately to work demands and pressures of a work setting. (Tr. 938-939).

3

Between September 25, 2014 and November 20, 2014, Plaintiff was noted as negative for diarrhea at no less than eleven visits. (Tr. 941, 949, 955, 961, 967, 978, 988, 999, 1005, 1015, 1027, 1032, 1037, 1047). At these visits, her weight consistently ranged between 160 to 166 pounds. (Tr. 941, 953, 959, 965, 976, 986, 997, 1003, 1013, 1024, 1030, 1035, 1048).

On December 12, 2014, Plaintiff saw Dr. Stallkamp for a four-month check-up for diabetes mellitus, hypertension, and hyperlipids. (Tr. 1119-1130). She was negative for diarrhea and other gastrointestinal symptoms. (Tr. 1125). Her weight was up to 170 pounds. (Tr. 1126).

Also on December 12, 2014, Plaintiff returned to Dr. Schroeder for a six-month diabetes follow-up. (Tr. 1481-1484). She was "not having episodes of Hypoglycemia." (Tr. 1481). She stated that that she had "diarrhea-rarely," and her abdominal examination was unremarkable. (Tr. 1483-1484).

On March 16, 2015, Plaintiff returned to Dr. Stallkamp and was positive for intermittent diarrhea, but negative for blood in stool and anal bleeding. (Tr. 1137). Her weight had increased to 174 pounds. (Tr. 1138).

On April 2, 2015, Plaintiff visited the ER for hypoglycemia. (Tr. 1144-1154). She reported that she had been eating normally, but had been "very active" that week "as her son got married [and] she [wa]s watching his dog." (Tr. 1144). She was negative for diarrhea. (Tr. 1145).

On June 11, 2015, Plaintiff returned to Dr. Schroeder for her six-month diabetes follow-up (Tr. 1476-1480). Plaintiff reported that she was having more episodes of hypoglycemia (Tr. 1476). She was negative for diarrhea, and her weight had risen to 181 pounds. (Tr. 1478).

On July 2, 2015, Plaintiff was negative for diarrhea, and weighed 177 pounds. (Tr. 1161-1162).

On October 14, 2015, Plaintiff returned to Dr. Schroeder and continued to report episodes

of hypoglycemia. (Tr. 1471-1475). She was checking her blood sugar once per day. (Tr. 1471). She reported that she did not get disability, but was not working anymore and decided to stay home, but remained active while being home. (Tr. 1471). She was negative for diarrhea. (Tr. 1473).

On December 10, 2015, Plaintiff visited the ER for a headache and hypertension. (Tr. 1402). She was negative for diarrhea. *Id*.

During an office visit with Dr. Stallkamp on December 29, 2015, Plaintiff was negative for diarrhea, and weighed 181 pounds. (Tr. 1167-1174).

On January 2, 2016, Plaintiff reported to the ER for left wrist pain. She injured herself while taking down Christmas lights—the record indicating while "climbing down a ladder, she slipped, fell and landed on her left hand and buttocks". (Tr. 1435-1445). She was negative for diarrhea. (Tr. 1436). X-rays of the left wrist revealed a fracture. (Tr. 1444)

On January 12, 2016, Plaintiff was negative for diarrhea. (Tr. 1186). On physical examination, her abdomen was soft and her bowel sounds normal. *Id*. She weighed 177 pounds. *Id*.

On February 17, 2016, Plaintiff returned to Dr. Schroeder for her four-month diabetes follow-up. (Tr. 1466-1470). Plaintiff stated that she was not having episodes of hypoglycemia (Tr. 1466). She admitted gastropathy, but denied diarrhea and other gastrointestinal symptoms. (Tr. 1468).

On April 12, 2016, it was noted that Plaintiff was scheduled for thyroid surgery two weeks later. (Tr. 1200). Plaintiff was negative for diarrhea, complained of a tender and itchy area on her left thigh, and weighed 175 pounds. *Id*.

On April 25, 2016, Plaintiff underwent a total thyroidectomy without complications. (Tr.

1235, 1256-1259). At a preoperative evaluation, Plaintiff noted GERD as her only gastrointestinal symptom. (Tr. 1237).

On May 12, 2016, Plaintiff returned to Dr. Schroeder for diabetes follow-up and denied constipation or any change in bowel habits. (Tr. 1463).

On June 15, 2016, Plaintiff returned to Dr. Schroeder and reported that she was not having episodes of hypoglycemia. (Tr. 1510). Plaintiff stated that her energy was better, and that her stomach was doing well. *Id*. She denied diarrhea or any other gastrointestinal symptoms. (Tr. 1512).

On September 27, 2016, Plaintiff saw Dr. Schroeder and "complain[ed] of an excess of diarrhea lately due to [irritable bowel syndrome] and nerves." (Tr. 1540). Dr. Schroeder assessed: (1) clinically significant macular edema associated with type 1 diabetes; (2) controlled type 1 diabetes mellitus with peripheral vascular disease; (3) chronic kidney disease due to type 1 diabetes mellitus; (4) primary hypothyroidism; (5) gastroparesis; (6) hypokalemia; and, (7) hypertension, essential, benign. (Tr. 1543-1544). Dr. Schroeder's treatment note included a question: "IS THE DIARRHEA DIABETIC?????" (Tr. 1544). Her weight was 179 pounds. (Tr. 1543).

On October 30, 2016, Plaintiff presented to an ER with hypoglycemia complaining of sweats, chills, and slurred speech. (Tr. 1557-1576). Plaintiff reported chronic diarrhea without abdominal pain. (Tr. 1557-1558). She was negative for unexpected weight change, and weighed 175 pounds. (Tr. 1558, 1560). Plaintiff was discharged the same day, and Plaintiff had "total resolution of all symptoms." (Tr. 1562).

On November 7, 2016, Plaintiff presented to the ER via EMS with a headache and hypoglycemia. (Tr. 1577-1579). Plaintiff's spouse stated she "has been under added stress and

6

doesn't believe she's been eating and taking care of herself. States this is her second episode this week." (Tr. 1579). She was discharged the same day (Tr. 1577).

On November 27, 2016, Plaintiff presented to the ER after an apparent hypoglycemic reaction. (Tr. 1592). Plaintiff reported that she had been "doing great for a year," but in the past month had three episodes of hypoglycemia. (Tr. 1592, 1603). She reported more activity recently with an increased amount of cooking and food with the holidays. (Tr. 1592). She denied diarrhea (Tr. 1592, 1615). Plaintiff was discharged on November 29, 2016. (Tr. 1604).

On December 21, 2016, Plaintiff was positive for diarrhea, nausea, and vomiting, but negative for abdominal distension, abdominal pain, anal bleeding, blood in stool, and constipation. (Tr. 277). Her weight was 178 pounds. (Tr. 278).

### 2.   Medical Opinions Concerning Plaintiff's Functional Limitations

On September 16, 2014, Dr. Schroeder wrote a letter to the Bureau of Disability Determination Services. (Tr. 849-50). He reported treating Plaintiff since 1995, noting she was having "profound episodes of low blood sugar on Lente insulin and Humalog," and was "changed to Lantus insulin to see if we could improve her glycemic control without more hypoglycemia." (Tr. 850). Her current symptoms included intractable nausea and vomiting at times requiring intravenous hydration, and spontaneous hypoglycemia at work and occasionally at home. *Id*. He indicated she had "occasional diabetic diarrhea." *Id*. He wrote that Plaintiff "is able to sit and stand, walk, bend, stoop and lift, although if she has a great amount of increased physical activity she will spontaneously have hypoglycemia and be unconscious." (Tr. 850). Lastly, he characterized her eye disease as "significant," but did not believe it greatly influenced her work activities. *Id*.

On October 14, 2016, Dr. Schroeder completed a check-box medical statement concerning

7

Plaintiff's physical abilities and limitations. (Tr. 1524-1525). He identified type I diabetes mellitus, gastroparesis, and hypoglycemic unawareness as her diagnoses. (Tr. 1524). Dr. Schroeder opined that Plaintiff suffered from moderate pain, but left blank the question asking him to identify the cause. *Id*. He indicated that Plaintiff was able to work two hours without a break, but then indicated that muscle weakness and pain caused a need for breaks and Plaintiff could work no more than two hours total in a day. *Id*. He did not indicate how long Plaintiff could sit or stand at one time. *Id*. He opined that Plaintiff could lift five pounds rarely and no weight occasionally; could rarely bend, stoop, or balance; and, could occasionally perform fine manipulation but *never* perform gross manipulation, raise her arms over her shoulder, or reach out with both arms. *Id*. He stated that Plaintiff needed to occasionally elevate her legs during the course of the workday to either hip or waist height. *Id*. He also indicated that Plaintiff was unable to work around dangerous equipment or operate a motor vehicle in a work setting. (Tr. 1525). He opined that Plaintiff would be off task 25 percent of the day and would miss more than four days of work per month. *Id*.

On November 3, 2016, Dr. Schroeder wrote a letter indicating that Plaintiff's condition had deteriorated since his previous report from 2014. (Tr. 1556). He explained that there was a significant decrease in her renal function, and that Plaintiff had hypoglycemic unawareness and gastroparesis. *Id*. He noted the presence of intermittent chest pain and "significant diabetic diarrhea, which is at times uncontrolled." *Id*. He stated that he was trying to control her diabetic diarrhea without the use of narcotics, and felt it was unsafe for patient to work "in any environment because of her explosive uncontrolled diarrhea and because of her significant peripheral neuropathy." *Id*. He indicated Plaintiff's stamina was low, and that she could not lift

more than 5 pounds, and that she could not bend, stoop, climb, or balance. *Id.*[2]

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6ᵗʰ Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6ᵗʰ Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s)

---

[2] As Plaintiff has not challenged the ALJ's credibility assessment or the VE's testimony, the court foregoes a summary of the hearing testimony.

does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

## IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since June 20, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: diabetes mellitus with neuropathy; gastroparesis; gastroesophageal reflux disease (GERD); coronary and peripheral artery disease; hypertension; obesity; hearing loss within the right ear; degenerative disc and joint disease of the spine; history of left wrist break and subsequent carpal tunnel syndrome, status post release surgery (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant could frequently handle and finger. She could occasionally push/pull with the bilateral upper extremities as well as occasionally reach overhead. She could frequently kneel and crouch and could occasionally climb ramps and stairs, stoop, and crawl. The claimant would be precluded from climbing ladders, ropes, and scaffolds and from exposure to hazards, such as dangerous machinery and unprotected heights. She would be precluded from commercial driving. The claimant could have exposure to moderate noise, defined as SCO level three. She would require accessibility to the restroom throughout the workday.

6. The claimant is capable of performing past relevant work as a pre service specialist; medical coder; and an accounts payable clerk This work does not

require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 20, 2014, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 226-244).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id*. However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.  Plaintiff's Assignments of Error

### 1. Weight Ascribed to Dr. Schroeder's Opinions

In the first assignment of error, Plaintiff asserts that the ALJ gave only some weight to the opinions of her treating endocrinologist, Dr. Schroeder, and that the explanation given by the ALJ for rejecting many of Dr. Schroeder's opinions violated the treating physician rule. (R. 9, PageID# 1692-1698). Specifically, Plaintiff argues the ALJ did not set forth "good reasons" for rejecting the limitations Dr. Schroeder assessed. *Id*. at PageID# 1695. The Commissioner, conversely, asserts that the ALJ properly addressed Dr. Schroder's three separate opinions. (R. 13, PageID# 1774-1781).

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)).   In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of

their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson, 378 F.3d at 544* (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

The ALJ extensively addressed Dr. Schroeder's opinions as follows:

As for the opinion evidence, the undersigned affords some weight to the opinion of the claimant's treating physician Dr. Schroeder, M.D., evidenced at Exhibit 5F/3. Dr. Schroeder opined in September 2014 that the claimant would have difficulty in a work setting due to her hypoglycemia. He noted that she was able to sit, stand, walk, bend, stoop, and lift; however, if she had a great amount of increased physical activity she would spontaneously have hypoglycemia and be unconscious. Further, he noted that her eye disease does not greatly influence her work activities. The undersigned affords some weight to the notion that the claimant's hypoglycemic episodes are triggered by increased physical activity, as the record supports since the time of this assessment, the record supported general symptom control until October 2016 and November 2016, during which time the claimant endorsed three hypoglycemic episodes related to her self-reported increased physical activity related to the upcoming holidays. The undersigned indicates that when not overdoing it, the record supports the claimant continues to remain able to engage in most physical activities. The record supports as recently as January 2016, the claimant was outside climbing ladders and taking down her own Christmas lights. The undersigned affords greater weight to the indication that the claimant's ocular conditions do not pose any significant work limitations. The record notes no more than mild eye deficits and the claimant herself noted she was not precluded from driving and did not have any significant vision problems. Dr. Schroeder was a treating source and familiar with the claimant's medical conditions and symptoms at the time his statement was made in September 2014. His statements were somewhat consistent with the evidence of record at that time. Thus, the undersigned gives Dr. Schroeder some weight.

\*\*\*

The undersigned has read and considered the October 2016 and November 2016 statements provided by Dr. Schroeder, M.D., evidenced at Exhibits 24F and 28F. At Exhibit 24F, Dr. Schroeder completed a functional capacity assessment and at Exhibit 28F, he completed a statement including some functional limitations. Together, within the opinions, Dr. Schroeder indicated the claimant could not work. He assessed she could lift no more than 5 pounds, could not work more than 2 hours during a workday. Would be rarely able to bend, stoop, and balance. Would have difficulty performing repetitive motions of the hands due to numbness and tingling and would be limited to occasional fine manipulation and would be precluded from gross manipulation, raising her arms over her shoulders, and reaching out in front of her. He assessed an occasional need to elevate her legs during the course of the workday at either hip or waist height. He noted she would require limits around equipment and operating a motor vehicle. He assessed the claimant would be off task 25 percent of the day and would miss work more than 4 days per month. He indicated that generally work would be precluded and unsafe in any environment because of her explosive, uncontrolled diarrhea and her peripheral neuropathy. The undersigned affords less weight to the mere preclusion of work related activities, as such a determination is one

14

reserved for the Commissioner. The undersigned affords some weight to the claimant's limited ability to stand, walk, lift, and carry, as well as engage in postural activities as the record supports her combinations of physical conditions would result in some physical limitations. However, the undersigned gives less weight to the indication she would not be able to work more than 2 hours in a day and could lift no more than 5 pounds. The undersigned has given her some limitations on handling, fingering, and reaching overhead, but finds preclusions on such activities are not supported by the medical evidence of record. The record supports only a history of carpal tunnel syndrome, remote history of left wrist fracture, and some cervical and lumbar degenerative disc disease, requiring no invasive treatment modalities. While the claimant would require access to a bathroom, the record does not support she reported being in any incapacitating pain and there is no indication she was prescribed any narcotic pain medication that would have interfered with her attention or concentration. Further, the claimant did not show consistent inattention or confusion related to her diabetic condition, rather she only experienced such symptoms when she engaged in increased physical activity. Thus, the record does not support the noted off task limitations or the days of missed work per month noted by the physician. The record supported, other than her more recent three episodes of hypoglycemia (attributed to her increased physical activity), the record showed generally stable physical conditions. The undersigned notes the claimant was diagnosed with a vascular disease; however, the record does not indicate the claimant was consistently noted to have lower extremity swelling and despite her condition, the claimant showed no lower extremity weakness or gait deficits. Thus, the undersigned finds the need to elevate her legs to waist level is not supported by the evidence of record. Further, the undersigned has considered the gastrointestinal conditions of record, but finds the descriptions noted by the doctor are overstated and are not objectively supported by the record as a whole. The record shows some instances of diarrhea and abdominal discomfort, but the record does not indicate the claimant routinely reported explosive, uncontrolled bowel movements to medical providers. There was no indication in the record the claimant required prescriptions for adult protective undergarments and the claimant did not voice concerns leaving her home due to such potential embarrassing accidents. Therefore, overall, the undersigned gives no more than some weight to Dr. Schroeder, as his statements were no more than somewhat consistent with the objectively documented evidence of record.

(Tr. 241, 242)

With respect to the Dr. Schroeder's September 2014 opinion, the ALJ accorded it some weight, noting that Dr. Schroeder believed Plaintiff was able to sit, stand, walk, bend, stoop, and lift—opinions that are not inconsistent with the ultimate RFC for sedentary work. (Tr. 232).

Plaintiff's primary argument appears to be that the ALJ acknowledged that her "hypoglycemic episodes are a real threat, especially when [she] has increased physical activity[,] [but] [t]he ALJ, however, does not indicate what level of increased physical activity would trigger such episodes. The ALJ does not give any sort of explanation as to what degree of physical activity [she] can sustain before such episodes are triggered." (R. 9, PageID# 1695).

Contrary to Plaintiff's assertion, it is not the ALJ who was vague and imprecise in coining the phrase "great amount of increased physical activity," that could lead to spontaneous hypoglycemia and unconsciousness, but Dr. Schroeder. Plaintiff essentially argues that the ALJ should have defined or determined exactly what Dr. Schroeder intended by those terms. But Plaintiff cites no law to support such a proposition. In addition, by finding Plaintiff was limited to sedentary work,[3] which requires typically no more than two hours total of standing/walking in an 8-hour workday, the ALJ determined that such level of work did not constitute a "great amount of physical activity." The ALJ specifically notes that the record shows general symptom control throughout most of the relevant time period, and there is no indication in the record that Plaintiff regularly refrained from the minimal amount of standing/walking necessary for sedentary work. Thus, the court cannot find that the RFC did not adequately account for the prohibition against a "great amount of increased physical activity," or that the ALJ's

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). "'Occasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251 at *5 (S.S.A. 1983).

determination in this regard was an unreasonable interpretation of Dr. Schroeder's opinion or the evidence of record.

Turning to the somewhat more specific exertional limitations set forth in Dr. Schroeder's October 2016 (Tr. 1524-1525) and November 2016 (Tr. 1556) opinions, Plaintiff contends that "the ALJ merely explained that he disagreed with Dr. Schroeder and had already included some limitations in the residual functional capacity regarding those abilities…. To support his conclusion, the ALJ simply recited various diagnoses and cursorily noted that the evidence was inconsistent with such opinions." (R. 9, PageID# 1696). The court disagrees.

First, Dr. Schroeder did not identify any specific sitting or standing limitations with respect to the assertion from the October 2016 checkbox medical statement that Plaintiff can only work for two hours in an 8-hour workday. (Tr. 1524). Nonetheless, while the ALJ acknowledged that claimant had some "limited ability to stand, walk," it is apparent the ALJ did not believe those limits precluded the ability to sit for up to six hours and stand/walk for up two hours as needed to perform sedentary work. Plaintiff's brief does not identify any sitting limitations in the medical record.

With respect to standing/walking limitations—to the extent Dr. Schroder's opinion can even be interpreted as a finding of an inability to stand/walk for two hours—the ALJ's analysis reasonably explained why such an opinion would be unsupported. The ALJ expressly notes the record's consistent lack of lower extremity swelling, the absence of lower extremity weakness, and the lack of gait deficits, in discussing Dr. Schroeder's October and November 2016 opinions. (Tr. 242-243). In addition, reading the decision as a whole, the ALJ earlier discusses the following: Plaintiff's normal reflexes, pulses, and range of motion in the lower extremities; Plaintiff's ability to ambulate as late as November of 2016; the lack of evidence that Plaintiff

needed any ambulatory aids; Plaintiff's normal strength in the extremities; the absence of edema in 2016; and the lack of gait deficits. (Tr. 234, 236, 240, 241). The ALJ also noted the lack of evidence in the record suggesting the need for Plaintiff to elevate her legs (Tr. 243), and Plaintiff cites no evidence to the contrary, beyond the opinion in question.

In addition, the ALJ sufficiently addressed Dr. Schroeder's opinion that Plaintiff could lift no more than five pounds and had a near prohibition against all manipulative activities except for occasional fingering. Here, the ALJ explained that he had assigned some level of limitation, but noted the Plaintiff's medical impairments (*i.e.* history of carpal tunnel, remote history of left wrist fracture, degenerative disc disease) did not require invasive treatment and did not support the limitations the doctor assessed. (Tr. 242). The ALJ also explained, earlier in the decision, that "[w]hile the claimant reported some grip problems, the record notes only some mild symptoms in her hands and she remained able to use her hands to complete household chores as well as drive." (Tr. 240).

Finally, with respect to Dr. Schroeder's opinion that Plaintiff could not work due to explosive and uncontrolled diarrhea, the ALJ plainly rejected this opinion. It is apparent the ALJ rejected that opinion and Plaintiff's alleged severe diarrhea because Plaintiff did not routinely report such diarrhea to medical providers. (Tr. 243). The ALJ, moreover, supported the decision by noting the absence of protective undergarments or embarrassing accidents that would cause Plaintiff to avoid leaving home. In other parts of the decision, the ALJ elaborated on the Plaintiff's diarrhea symptoms as follows:

> The claimant endorsed having her diabetic condition for many years, but reported control issues more recently in the past 3-4 years. She stated that she has issues with diarrhea, gastroparesis, and glucose levels. She reported at times she feels full and is not hungry. The claimant explained she uses the restroom related to diarrhea approximately five times per week and can spend 2-3 hours in the

bathroom. The claimant endorsed having some bowel related accidents and indicated at times it is better for her to shower after a bowel movement.

\*\*\*

While the claimant's physician reported the claimant experienced explosive and unexpected bowel movements (Exhibit 28F), the record does not objectively document the claimant was reporting such symptomology to any of her treating physicians on a routine or consistent basis. While the claimant testified to accidents related to her bowel issues, the record does not document the claimant reporting bowel urgency and incontinence to her treating physicians as a regular and consistent problem. There are no prescriptions or suggestions regarding adult protective undergarments. The claimant does not voice any concerns regarding leaving her home due to fear of bowel related accidents or incidents and she does not remark about embarrassment from past instances when in public, as are typically common with the severity, frequency, and intensity of symptoms she reports. The claimant testified that despite her bowel related symptoms, she remains able to leave her home unaccompanied to go shopping and run errands and she admitted she leaves her home with her friends to go shopping, walking, and to the movies. She reported engaging in these activities without any fear of bowel related accidents, needing a change of clothes, or needing access to a restroom facility. Further, the record documents the claimant's weight has remained generally stable with body mass indexes, as noted above, at either 30 or greater. This suggests no fluctuation in her weight and the claimant remained obese despite her reported frequent bowel movements.

\*\*\*

Further, there was no objective evidence supporting the frequency or duration of her reported bowel movements. Despite reporting multiple hours in the rest room due to gastric symptoms, the record indicated the claimant continued to leave her home unaccompanied and engage in normal social activities. Further, the record supported despite her incidents of diarrhea and gastrointestinal distress, the claimant was gaining weight and her body mass index was increasing over time.

(Tr. 233, 237, 240-241).

The ALJ's finding—that Plaintiff failed to routinely report chronic, persistent diarrhea—is

supported by the record. The medical records, as relayed through the above factual summary,

show that Plaintiff routinely was negative for diarrhea during the relevant time period—the

alleged onset June 20, 2014, to the date of the decision, January 19, 2017. The ALJ also correctly

notes that Plaintiff's weight did not decrease, with allegations of chronic diarrhea, but actually increased. In addition, Plaintiff's allegation in the "Statement of Facts" that her diabetic diarrhea has been "constant and chronic throughout the relevant time period" is not supported by the treatment records. (R. 9, PageID# 1690). Seven of the twelve pages of medical records cited in support of her statement regarding diarrhea relate to medical visits that predate the alleged onset date. (R. 9, PageID# 1690, citing PageID# 578, 589, 673, 677, 904, 932, 1534.)[4]

Plaintiff cites treatment notes from December 21, 2016, that merely note diarrhea was present, but diarrhea was not even included among the reasons for Plaintiff's medical visit that day—she complained of "horrific headaches, sinus issues, nausea." (Tr. 266, 277). At a visit to Dr. Schroeder nine days earlier, a record also cited by Plaintiff, she indicated she suffered from diarrhea rarely. (Tr. 1483). In March of 2015, she noted at one visit "intermittent" diarrhea. (Tr. 1137). Her first complaint of "an excess of diarrhea" did not occur until September 27, 2016.[5] (Tr. 1540). Taken together, the handful of records documenting the presence of diarrhea during the relevant time period are vastly outnumbered by treatment notes indicating that Plaintiff was negative for diarrhea. (*See* Part II, *supra*). Therefore, the court's finds the ALJ gave ample "good reasons" for rejecting the limitations assessed by Dr. Schroeder stemming from Plaintiff's diarrhea symptoms.

---

[4] The court refers to "twelve pages of medical records," although the Plaintiff's brief includes a string citation to fourteen records, because two of Plaintiff's citations are to the Hearing Transcript (PageID# 392-93) and a medical opinion (*id.* 1599). Plaintiff's brief includes the same string citation at PageID# 1697 and 1702, and there too references the same records that predate the onset date.

[5] Even assuming *arguendo* that Plaintiff's diarrhea significantly worsened in September of 2016 and her symptoms remained at that level until January 19, 2017, the date of the ALJ's decision, the severity of Plaintiff's diarrhea impairment would not have persisted for twelve months.

For the foregoing reasons, Plaintiff's first assignment of error is without merit.

**2. RFC Unsupported by Substantial Evidence.**

In the second assignment of error, Plaintiff asserts the RFC is not supported by substantial evidence. (R. 9, PageID# 1698-1703).

The RFC is an indication of an individual's work related abilities *despite* their limitations. *See* 20 C.F.R. §§ 404.1545(a).[6] The ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c). The concomitant hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

In addition, testimony from a vocational expert—in response to a hypothetical question—may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)). However, "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or

---

[6] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, **the claimant's RFC**, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. App'x. 498, 505 (6th Cir. 2013) (internal citations omitted)).

her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)). In other words, when an ALJ presents hypothetical question(s) to the VE, the ALJ is required to incorporate only those limitations that have been accepted as credible. *Griffeth*, 217 Fed. App'x at 429 (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)); *see also Elliott v. Comm'r of Soc. Sec.*, No. 1:09cv2260, 2011 WL 400101 (N.D. Ohio, Jan. 11, 2011) (Armstrong, M.J.) ("In formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he deems credible.") (*citing Gant v. Comm'r of Soc. Sec.*, 372 Fed. App'x 582 (6th Cir. 2010); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)), *adopted by* 2011 WL 441518 (Feb. 4, 2011).

Plaintiff's RFC argument is largely redundant of her above argument that she needed frequent unscheduled breaks due to chronic and explosive diarrhea. (R. 9, PageID# 1702-1703). To the extent Plaintiff's second assignment of error merely repeats her prior argument that the ALJ should have ascribed greater weight to Dr. Schroeder's opinion, the court's above determination that the ALJ gave sufficiently good reasons for rejecting his opinion renders the argument moot. An ALJ need only include those limitations in an RFC that are credited. Similarly, to the extent Plaintiff asserts the ALJ should have included greater restrictions in the RFC based on her own testimony, the ALJ found "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record …. " (Tr. 233). In other words, the ALJ did not find Plaintiff entirely credible. Furthermore, Plaintiff has not challenged the ALJ's credibility

assessment, which is entitled to substantial deference.[7]  Simply put, the ALJ was under no obligation to incorporate limitations into the RFC that were rejected.

In a sub-argument to her assertion that the RFC was not supported by substantial evidence, Plaintiff contends the ALJ did not properly analyze her diabetes as required by SSR 14-2p, 2014 WL 2472008 (S.S.A. Jun. 2, 2014). (R. 9, PageID# 1699-1701). Plaintiff, however, does not identify any procedural requirement in SSR 14-2p that the ALJ failed to comply with or carry out. Instead, Plaintiff merely notes some of the symptoms identified in SSR 14-2p that are common with diabetes. *Id*. But Plaintiff's ensuing assertion—that she suffered from some of these symptoms and that these symptoms were not sufficiently accommodated by the RFC—is not grounds for remand.

First, an ALJ is not required to incorporate into the RFC every symptom alleged by a claimant. *See, e.g., Harris v. Barnhart*, 171 Fed. App'x 211, 214 (9th Cir. 2006) ("The ALJ is not required to accept every symptom of which a claimant complains as rising to the level of a functional limitation."). Moreover, courts "may not reweigh conflicting evidence on appeal, but instead must affirm" if a decision is supported by substantial evidence. *Haun v. Comm'r of Soc. Sec.*, 107 Fed. App'x 462, 465 (6th Cir. 2004); *see also Steed v. Colvi*n, 2016 U.S. Dist. LEXIS

---

[7]  Plaintiff has not presented the court with a legal argument challenging the ALJ's credibility determination, and, therefore, has waived any issue regarding ALJ's credibility assessment. *See, e.g., Siple-Niehaus v. Comm'r of Soc. Sec.*, No. 5:15cv01167, 2016 WL 2868735, at n. 12 (N.D. Ohio, May 17, 2016) (finding that plaintiff "has not challenged the ALJ's credibility determination" and, therefore, "arguments pertaining to the ALJ's assessment of her credibility have been waived.") (Burke, M.J.); *cf. Williams v. Comm'r of Soc. Sec.*, No. 2:14cv2655, 2016 WL 2733518, at *2 (S.D. Ohio May 10, 2016) (declining to consider Plaintiff's argument challenging the ALJ's credibility determination, because it was not raised before the Magistrate Judge in the statement of errors). In addition, the court's role in a social security appeal is not to conduct a *de novo* review of the evidence, to make credibility determinations, or to reweigh the evidence; and therefore, it declines Plaintiff's invitation to deem her characterization of symptoms and limitations as fully credible. *Brainard*, 889 F.2d at 681.

114027 (N. D. Ohio, Aug. 25, 2016) (McHargh, M.J.) ("While [the plaintiff] may disagree with the ALJ's explanation or her interpretation of the evidence of record, her disagreement with the ALJ's rationale does not provide a basis for remand."); *Kiser v. Colvin*, No. CV 14-170, 2016 WL 527942, at *3 (E.D. Ky. Feb. 8, 2016) ("To the extent that Plaintiff suggests that … evidence is open to another interpretation that favors his claim, the Court declines to reweigh the evidence in this fashion."); *Whetsel v. Comm'r of Soc. Sec.*, No. 2:15-CV-3015, 2017 WL 443499, at *8 (S.D. Ohio Feb. 2, 2017) ("[I]t is not this Court's job to reweigh the evidence, but only to determine if the ALJ has evaluated it in a reasonable fashion."), *report and recommendation adopted*, No. 2:15-CV-3015, 2017 WL 1034583 (S.D. Ohio Mar. 16, 2017). Therefore, it is questionable whether Plaintiff raises a cognizable claim to the extent she is merely taking issue with the ALJ's interpretation of the evidence. Although Plaintiff clearly believes the ALJ should have assessed more restrictive limitations based on her interpretation of the medical record, that belief does not establish a violation of the substantial evidence standard.

The court finds Plaintiff's second assignment of error to be without merit.

## VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: July 11, 2018

24

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).