# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Joyce A. Harrod,            Case No. 3:17CV1839

    Plaintiff

    v.               **ORDER**

Commissioner of Social Security,

    Defendant

This is a Social Security case in which the plaintiff, Joyce Harrod, appeals the denial of her application for benefits.

An administrative law judge concluded that Harrod suffered from many severe impairments, including gastroparesis and diabetes mellitus that produced hypoglycemic episodes. (Doc. 8 at 231, 242). The ALJ found that, despite these impairments, Harrod had the residual functional capacity (RFC) to perform "sedentary work" in which Harrod would sit for about six hours out of an eight-hour shift and stand or walk in the remaining two hours. (*Id.* at 237); SSR 83–10, 1983 WL 31251, *5 (S.S.A 1983).

Because this RFC allowed Harrod to perform her "past relevant work," the ALJ ruled that she was not disabled. (*Id.* at 249).

Pending is Magistrate Judge Ruiz's Report and Recommendation, which recommends that I affirm the denial of benefits. (Doc. 15). Harrod has filed an objection. (Doc. 16).

On de novo review of the R&R, *see* 28 U.S.C. § 636(b)(1), I overrule the objection, adopt the R&R as the order of the court, and affirm the Commissioner's denial of benefits.

**Discussion**

**A. The "Vague" Limitation Regarding Harrod's Bathroom Access**

Opening with the bold and, as it turns out, unfounded claim that "[n]either the Magistrate Judge nor the Commissioner properly understand [*sic*] the issue at hand," Harrod's objection first asserts that the ALJ erred when, in the course of determining Harrod's RFC, he concluded that having "accessibility to the restroom throughout the work" adequately accounted for her gastroparesis. (Doc. 16 at 2).

Harrod emphasizes that this limitation "is vague" because it "does not address the frequency with which Ms. Harrod will need to use the restroom" or "for how long [she] will need to use the restroom." (*Id.* at 2, 3). For that reason, Harrod argues, the ALJ's analysis "does not allow for a proper review of the record[.]" (*Id.* at 3).

This objection has no merit.

Gastroparesis is a condition that affects the normal spontaneous movements (known as "motility") of the stomach muscles. (Doc. 13 at 2 n.1). The condition slows down or halts the stomach's motility, thereby preventing the stomach from emptying properly. (*Id.*). Symptoms include nausea, vomiting, and (apparently) diarrhea. (*Id.*).

Harrod testified at the November, 2016, administrative hearing that she had diarrhea "[a]t least five days a week," with each episode lasting at least one hour, and some as many as three hours. (Doc. 8 at 354). She claimed that each episode "c[a]me so quick I can't control – hold it," and that she had recently had many accidents. (*Id.* at 354, 355).

Had the ALJ credited this evidence, it might have given the ALJ a basis to alter Harrod's RFC to reflect that she could not work without frequent and/or extended restroom breaks. But the

ALJ did not credit it, and, as the Magistrate Judge recognized (Doc. 15 at 22–23), substantial evidence permitted the ALJ to make such an adverse credibility determination.

As the ALJ explained, Harrod's account of the severity and frequency of her diarrhea had no objective support in the record:

> [T]he record does not objectively document [that Harrod] was reporting [explosive and unexpected bowel movements] to any of her treating physicians on a routine or consistent basis. While [Harrod] testified to accidents related to her bowel issues, the record does not document [Harrod] reporting bowel urgency and incontinence to her treating physicians as a regular and consistent problem. There are no prescriptions or suggestions regarding adult protective undergarments. [Harrod] does not voice any concerns regarding her leaving her home due to fear of bowel related accidents or incidents and she does not remark about embarrassment from past instances when in public, as are typically common with the severity, frequency, and intensity of symptoms she reports. [Harrod] testified that despite her bowel related symptoms, she remains able to leave her home with her friends to go shopping, walking, and to the movies.

(Doc. 8 at 242).

It was in this context that the ALJ determined that Harrod could work provided that she had access to the bathroom throughout the workday. (*Id.* at 237). So understood, the limitation is, contrary to Harrod's contention, entirely intelligible: because there was no documentary or medical evidence to support Harrod's description of the severity of her diarrhea – and thus no basis to conclude that she needed frequent or extended breaks – the ALJ thought it sufficient, and permissibly so, that Harrod have only ordinary access to the bathroom.

For these reasons, the Magistrate Judge correctly concluded that substantial evidence supported the ALJ's handling of the limitation needed to accommodate Harrod's gastroparesis and attendant diarrhea. I therefore I overrule Harrod's first objection.

## B. Treating-Source Rule

Harrod next objects to the ALJ's decision giving "some weight" to the opinion of her treating endocrinologist, Dr. Leroy Schroeder, that Harrod will "have hypoglycemia and be unconscious" if she engages in "a great amount of physical activity." (Doc. 8 at 855).[1]

According to Harrod, the ALJ's analysis is deficient because it does not permit me to understand "[w]hat type of increased activity would trigger such episodes[.]" (Doc. 16 at 4). She also implies that the RFC limiting her to sedentary work is inconsistent with Schroeder's opinion that she cannot engage in "a great amount of physical activity." (*Id.* at 4–5). Finally, Harrod maintains that the ALJ and the Magistrate Judge "ignored the bigger picture" that Dr. Schroeder sketched: that Harrod could work for only two hours in an eight-hour workday, after which "she was likely to experience increased symptoms and even hypoglycemic episodes." (*Id.* at 5).

This objection, too, is meritless.

"Treating-source opinions must be given controlling weight if two conditions are met: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

The Commissioner must provide "good reasons for discounting the weight given to a treating-source opinion," and these reasons "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*

---

[1] There is no evidence that Harrod ever lost consciousness during a hypoglycemic episode, and Harrod does not contend that the ALJ should have credited that part of Dr. Schroeder's opinion.

### 1. Schroeder's "Great Amount of Physical Activity" Opinion

It is undisputed that the ALJ credited Dr. Schroeder's opinion that a "great amount of physical activity" caused Harrod to experience hypoglycemic episodes. (Doc. 8 at 850). The first component of Harrod's objection, however, is that the ALJ's decision does not permit a reviewing court to know what kinds of physical activities the ALJ believed would precipitate such episodes.

The record refutes this claim.

Harrod experienced four hypoglycemic episodes between 2015 and November, 2016. (*Id.* at 243). The first episode, in 2015, occurred when Harrod "increase[d] . . . [her] physical activity" while caring for her son's dog. (*Id.*).

Harrod then experienced three hypoglycemic episodes in quick succession (each of which required a visit to the emergency room) in October and November, 2016. (*Id.*). After the second of these episodes, Harrod "admitted that she was under added stress and felt her hypoglycemic episodes were related to her not properly caring for herself, including not eating properly." (*Id.*). In the wake of the third episode, Harrod again acknowledged that "she has been engaged in increased activity and an increased amount of cooking." (*Id.*).

Based on this evidence, the ALJ found that Harrod was generally able to manage her hypoglycemia, and that she knew "her hypoglycemia is triggered by her increased activity, yet continues to engage in such activities." (*Id.*).

At the same time, the ALJ recognized that Harrod could exert herself to some, or even to a significant, degree without having a hypoglycemic episode. Besides the relative infrequency of the episodes themselves, the ALJ pointed to Harrod's ability to drive, "leave her home unaccompanied," "prepare meals," "interact with her friends regularly," and "complete

household chores with some breaks." (*Id.* at 245). The ALJ even cited evidence that Harrod was able, in January, 2016, to climb ladders and take down her Christmas decorations. (*Id.*).

It is the contrast between these two bodies of evidence that gives meaning to the ALJ's opinion that Harrod's "hypoglycemic episodes are triggered by increased physical activity." (*Id.* at 246).

On the one hand, Harrod is able to live an ordinary life and exert herself within reason: she can care for herself, perform basic tasks, go out in public with friends, and even climb ladders. Such activities form a baseline of exertion that did not, over the alleged period of disability, produced hypoglycemic episodes. Or, as the ALJ put it, "when not overdoing it . . . [Harrod] continues to remain able to engage in most physical activities." (*Id.*).

On the other hand, when Harrod exceeded this baseline by engaging in what she herself described as "increased physical activities," she opened herself up to the risk of having a hypoglycemic episode.

The ALJ's careful review of the record establishes what kinds of physical activities he believed Harrod could and could not perform.

Finally, I note that the ALJ's review of the record on this point contrasts sharply with Dr. Schroeder's opinion, which does not explain what he meant by "a great amount of physical activity." (*Id.* at 850).

Because Schroeder failed to explain the basis of his opinion, there is no evidence in the record from a treating source purporting to identify what level of activity will in fact cause Harrod to have a hypoglycemic episode. To point out that omission, as the Magistrate Judge appropriately did (Doc. 15 at 16–17), was not to excuse the ALJ's alleged "failure to explain the

6

reasoning behind his conclusion," as Harrod would have it. (Doc. 16 at 4). It was, rather, to explain still further why the ALJ's decision was consistent with the record as a whole.

For these reasons, I reject Harrod's claim that the ALJ's decision does not permit me to understand what kind of physical activities he believed would precipitate a hypoglycemic episode.

## 2. The Limitation to Sedentary Work

Harrod next argues that the Magistrate Judge violated the *Chenery* rule by concluding that the ALJ's decision to give "some weight" to Schroeder's opinion was consistent with his decision limiting Harrod to sedentary work. (Doc. 16 at 4–5). According to Harrod, the ALJ never explained how it was possible for her to perform sedentary work, given that she risked a hypoglycemic episode if she engaged in "a great amount of physical activity." (*Id.* at 5).

The ALJ's decision refutes this objection.

Indeed, the ALJ specifically said that he had "considered [Harrod's] history of diabetes mellitus and associated symptoms, including . . . her more recent episodes of hypoglycemia with increased physical activity" when he "reduc[ed] her to the performance of *a limited range of sedentary exertional level work*[.]" (Doc. 8 at 243) (emphasis supplied).

It could hardly be plainer that the ALJ believed that Harrod could perform sedentary work without experiencing hypoglycemic episodes. Harrod makes no argument, moreover, that such a finding lacks a substantial evidentiary basis in the record. (Doc. 16 at 4–5).

Because the factual predicate of this objection is false, I overrule the objection.

## 3. The "Bigger Picture"

Finally, Harrod essentially claims that, because Dr. Schroeder opined that she can "work for 2 hours in an 8-hour workday" but was "likely to experience increased symptoms and even

7

hypoglycemic episodes" if she worked longer, the ALJ had to credit that opinion. (Doc. 16 at 5). After all, Harrod contends, Schroeder "was the treating physician" and "was in the best possible position to accurately depict [her] functional capabilities." (*Id.* at 5–6).

This objection, which does not meaningfully grapple with either the ALJ's decision or the Magistrate Judge's R&R, lacks merit.

In an extended discussion, the ALJ explained why he did not credit this part of Dr. Schroeder's opinion. (Doc. 8 at 245–46). The Magistrate Judge, in an equally detailed analysis, explained why substantial evidence supported the ALJ's decision. (Doc. 15 at 17–18). Having considered these analyses against Harrod's claim that the Magistrate Judge "ignore[d] the bigger picture" (Doc. 16 at 5), I overrule her objection and adopt the reasoning of the ALJ and the Magistrate Judge.

## Conclusion

It is, therefore,

ORDERED THAT:

1. Harrod's objection to the Report and Recommendation (Doc. 16) be, and the same hereby is, overruled;

2. The Magistrate Judge's Report and Recommendation (Doc. 15) be, and the same hereby is, adopted as the order of the court; and

3. The Commissioner's decision denying the application for benefits be, and the same hereby is, affirmed.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge